BESSIE J. CUMMING, by Guardian, etc., Respondent *v.* THE
BROOKLYN CITY RAILROAD COMPANY, Appellant.

*Court of Appeals, February* 8, 1887.

Affirming same case, 38 Hun, 362.

*Negligence. Street crossing.*—In an action for an injury caused by the
alleged negligence of a railway company, which ran trains drawn
by a dummy engine through the streets of a city, the stopping of
its cars so as to wholly obstruct the street and prevent the plaint-
iff thereby from seeing a train coming behind such cars, until the
same was actually upon her, was a fact proper to be submitted
to the jury upon the question whether the defendant was guilty
of negligence in the running or management of its trains.

2. *Same. Mother of child.*—Where, in an action to recover damages for
injuries sustained by a child of tender years, who was struck by a
train when passing along a public street where it was crossed by a
railroad track, she was not guilty of any negligence, but acted in
all she did with ordinary care, it was entirely immaterial that her
mother was guilty of negligence in permitting her to be at large;
and the admission of incompetent evidence to excuse such negli-
gence on the mother's part was not ground for reversal.

3. *Evidence.*—It seems that evidence that the mother was unable to
hire any servant or person to aid her in looking after the child,
is not competent to rebut proof of negligence on her part, even
were such claim of imputed negligence material.

4. *Charge. Duty of counsel.*—Where the fair import of a charge, taken
as a whole, is in accordance with the law, but there is a doubt as
to the meaning thereof, and a possibility of the language being
construed too broadly by the jury, it is the duty of the complain-
ing party to call the attention of the court to the real error, and
not simply take a general exception.

Action to recover damages for personal injuries sustained
by plaintiff, alleged to have been cause by defendant's neg-
ligence.

Appeal from a judgment of the general term of the
supreme court, affirming a judgment in favor of the
plaintiff.

*Morris & Pearsall*, for appellant.

*B. F. Tracy* and *Carpenter & Roderick*, for respondent.

PECKHAM, J.—The defendant operates a railroad from the City of Brooklyn to Fort Hamilton and runs its cars by means of a dummy engine. Its tracks are laid through Third Avenue, which runs about north and south where it crosses Thirty-ninth Street at right angles.

There was enough proved to make it proper to submit to the jury the question of the negligence of the defendant. The injury occurred on the tenth of September, 1883, in the afternoon. Evidence was given that one train of two cars drawn by a dummy had come up on the east track on its way to Brooklyn, and had stopped at Thirty-ninth street for a moment or two, the dummy reaching somewhat beyond the north crossing of the street, while the rear end of the rear car was still some 17 or 18 feet south of the south cross-walk ; thus totally obstructing the passage on both cross-walks at Thirty-ninth street. The plaintiff was standing on the curb-stone near the south-east corner of the avenue and the street, waiting for the train to proceed on its way to Brooklyn ; and just about the time the train started she left the sidewalk, and commenced to cross the street towards the west, and arrived at where the up-train was passing at about the time the rear end of the second car was passing over the crossing, so that she left the north flag-stone of the cross-walk, and stepped to the south one, and passed to the rear of the car, and went towards the west or down track, and just as she stepped towards it she was struck by the dummy, drawing a train coming from Brooklyn, and which she could not see until she stepped from behind the train going to Brooklyn. There was an ordinance of the city put in evidence which provided that " cars stopping at a street intersection shall stop at the further walk thereof, so that the cars shall not when stopped interfere with the travel on cross-streets." The train from the north came down, mak-

ing no noise by either bell or whistle, and was going very slowly in order to stop at the Thirty-ninth street crossing. The crossing at this place was very much used, there being perhaps no other street along the route as much occupied as that. To stop its cars so as to wholly obstruct the street, the effect of which was to prevent persons in the situation of the plaintiff from seeing any train coming from Brooklyn until the same was actually upon them, was certainly a fact proper to be submitted to a jury upon the question of whether the defendant was guilty of negligence in the running or management of its trains.

The defendant claimed that the mother of the plaintiff was guilty of negligence in permitting the child to be at large, and that, as the child was but five years of age, and *non sui juris*, this negligence of the mother was imputable to the child, and she could not, therefore, recover. To rebut this claim of negligence, the plaintiff proved that the mother was unable to hire any servant or person to aid her in looking after the child, and hence it was claimed that, as negligence is to be proved or disproved from all the surrounding circumstances, this evidence of inability was proper. We are not prepared to sustain the correctness of the ruling which admitted this evidence; but it was addressed to the point of showing that the mother was not under the circumstances guilty of negligence, and such fact is entirely immaterial if the child herself was guilty of none. Ihl v. Railroad, 47 N. Y. 317. No facts were proved which showed any negligence on the part of the plaintiff. She was on a public street, and about to cross it, and waited for one train to pass the cross-walk on which she was. The street was a crowded one, and she naturally desired to get across it as soon as she reasonably could, and thus get out of danger from the carts, wagons, and other vehicles in such street. As the car reaches her cross-walk she steps from one stone to the other, and passes to the rear, for the purpose of crossing, and is struck by the other dummy before she has

even got upon the track. In all this she acted as any one might who was taking ordinary care, and who was desirous of getting across a crowded street over a somewhat dangerous crossing as soon as conveniently it could be done.

The greatest difficulty in the plaintiff's case, lies in the charge of the learned judge. He said to the jury that if they found defendant "omitted precautions which they should have adopted in order to prevent injury to people on this highway, then they are responsible." Again he said that "it is for you to say, under the circumstances, whether or not the defendants should have adopted other precautions at this place than those which they did observe."

If the court by this charge submitted the question to the jury to say in a general way what precautions should have been adopted by defendant to prevent injury to the people on the street, it undoubtedly was an error. Under such a charge the jury might find a flagman was a proper precaution, or gates, or that a man should run in front of the cars, or anything else which should commend itself to the judgment of the jury. Such has been held not to be the measure of liability of a corporation in the situation of defendant. Beiseigel *v.* N. Y. C. R. R. Co., 40 N. Y. 9; Dyer *v.* E. R. Co., 71 id. 228; Houghkirk *v.* D. & H. C. Co., 92 id. 219.

We think, however, that such is not the fair import of the charge, taken as a whole. The judge commenced his charge upon this subject by saying that the defendant had a right to operate its railroad over the street in question. The context shows he meant by this nothing more than that the defendant had a right to run its cars over the street; for, he continues by saying, that while a pedestrian or person in a vehicle can avoid the railroad, the engine and cars, on the contrary, are confined to the track; they must run upon that and they cannot turn to the right or to the left. Still, on the same subject, the judge continues and states that the railroad company, while bound to operate its road so as not to injure anybody, yet it was only bound to exercise ordinary care,

and if careful, and still an accident happened, the defendant would not be liable. Then he adds the part objected to, that if on the contrary you find they omitted precautions which they should have adopted, in order to prevent injury to people upon this highway, then they are responsible.

The duty of the company as laid down by the judge in this sentence, seems clearly to be confined to the " operation of its railroad," and we have seen that in using such expression the judge meant only to say that in running its cars, or in their management, the defendant need only use ordinary care, but that if thus running or managing its cars it omitted precautions, which, in the use fo ordinary care it should have adopted in order to prevent this injury, then it was liable.

The other portion of the charge relates to the failure to sound the whistle or ring the bell. The charge was explicit that there was no statutory duty to do either, but it left it to the jury to say whether, under all circumstances, they should have adopted some other precautions than those they observed regarding the running of the train. We put the last condition in for the reason already given that the judge used the expression " operate their railroad " as meaning, under the circumstances, run their cars ; and with reference to this portion of the charge it is still more apparent that we are right in such interpretation, for, after using that expression, the judge continues with language as to the propriety, or the reverse, of sounding a whistle or ringing a bell in such a thoroughfare, which only applies to the manner of running the cars, and not in the least to the necessity for a flagman, or gates or anything of that nature. And it is thus perfectly apparent that, the question submitted in reality to the jury was as to the lack of any precautions which ordinary prudence would dictate regarding the running of the cars or trains of the defendant.

If this interpretation of the meaning of the charge be the true one, the exception fails. If there be a doubt as to the meaning thereof in that particular, we think that con-

sidering the language used, the whole spirit of the charge and the context, that the defendant should have not alone excepted generally, but should have gone far enough to call the attention of the court to the real error complained of, viz., that possibly the language might be construed too broadly and as meaning that the precautions to be observed related to the whole general manner of conducting the business of the railroad, and might be thought to include the absence of a flagman or of gates at the crossing, even though in the actual running of the train there was no negligence.

In this case we do not mean to go one step beyond the well settled principles which have been adopted and frequently announced by this court. We simply say that the fair import of the charge, taken as a whole, is in accordance with such principles.

The defendant excepted to the refusal of the judge to charge that the ordinance put in evidence related to railroads operated with horse-power, and not to those operated with steam-power. We think there was no error in such refusal. The other sections of such ordinance showed remedies applicable to railroads operated by horse-power; but they do not control the express language of the section in question, which is broad enough to cover the case of a railroad operated by steam. In addition to that, the place for stopping cars, as provided in the ordinance, would commend itself to the good sense and judgment of every one; and even if there were no such ordinance, the failure of the defendant to operate its train in accordance with such a principle might fairly be submitted to a jury upon the question of its negligence in the management and operation of its trains.

The judgment should be affirmed.

All concur, except RAPALLO and EARL., JJ., not voting.