GEORGE W. PALMER, RESPONDENT, v. EUGENE H. CONANT AND GEORGE F. CONANT, APPELLANTS.

*Negligence — effect of payment of money to the father of an injured minor and the execution of a release by the minor.*

In an action to recover damages resulting from a personal injury received by the plaintiff through the alleged negligence of the defendants, it appeared that when the injuries were received by the plaintiff he was under twenty-one years of age, and that the defendants paid to his father the sum of $100, and a paper was thereupon executed by the plaintiff purporting to be a release of all claims against the defendants by reason of the injuries to the plaintiff.

*Held,* that the payment of the money to the father was not a bar to the right of the plaintiff to recover damages in this action.

That, in such an action, evidence of the amount of wages which the plaintiff is earning is admissible upon the question of damages.

APPEAL by the defendants from a judgment of the Supreme Court, entered in the office of the clerk of the county of Oneida on the 28th day of April, 1890; and also from an order denying a motion for a new trial made on the minutes of the court, entered March 13, 1890.

The action was tried at the Oneida Circuit before the court and a jury, and a verdict was rendered by the latter, in favor of the plaintiff, for the sum of $550.

The action was brought to recover damages for personal injuries received by the plaintiff through the alleged negligence of the defendants on the 19th of December, 1888, while the plaintiff was in the employ of the defendants in the operation of their saw-mill on the south side of Mad river, at Camden. James Gerow was defendants' foreman in their chair shop and factory operated in connection with the mill, and on that day he instructed the plaintiff to go to the dam and "help put on slash boards." It appears by the plaintiff's evidence that while he was engaged in putting on the flush boards "the north end of the log slid off of the abutment and throwed him (Chapman) down stream, and the board I had, with the pressure of the water, carried his end down, and the end I had carried me up. Just as I got on the pivotal part of the dam the south end of the log came off and struck my leg and dragged me down the apron of the dam ten or twelve feet. The log lying on the north end of

the dam first loosened and went down stream, then it loosened from the south abutment, so they left both abutments. These flush boards were of hard wood, an inch and a half thick, twelve feet long, and averaged from eighteen to twenty-four inches in width. They raised the water. When the log struck me it dragged me off the apron of the dam and ten or twelve feet down stream. The water took me down under and the logs went to the north side of the creek and the water washed me on the south side, and I got out the best way I could ; I don't know how. Below the dam I should think the stream was seventy or eighty feet wide in high water. The logs were washed on the north side. When I got out the bones in my left leg were sticking out through two pairs of pants into the water. It was from about an inch below the knee to the ankle."

It appeared that the round timbers, without being fastened on the bottom, were allowed to rest on the smooth abutments with no planking or fastening to hold them in place, other than a piece of two-inch plank nailed below them, and when the pressure of the water came they gave way.

*George F. Morss* and *C. D. Prescott*, for the appellants.

*P. H. Fitzgerald*, for the respondent.

HARDIN. P. J. :

We think the evidence presented a question of fact for the jury. It was for the jury to determine whether the defendants were guilty of negligence. It was for the jury to determine whether the dam was so constructed as to secure safety, and whether the principle upon which it was constructed was reasonably safe, and whether reasonable guards to secure safety were provided by the defendants. (*Newall* v. *Bartlett*, 114 N. Y., 404 ; *Pantzar* v. *Tilly Foster Iron Mining Co.*, 99 id., 372.)

It appears by the evidence that the plaintiff was not present when the scantling were put down, and knew nothing of the manner in which they were fastened. The jury may properly have found upon the evidence that the plaintiff had no knowledge or appreciation of the defects which led to the accident, and that he was not chargeable with having voluntarily taken the risks incident to the situation in which he was placed. Whatever question there was

upon that subject, we are of the opinion that it was one for the jury to determine. (*Benzing* v. *Steinway & Sons*, 101 N. Y., 547.)

(2.) Plaintiff was asked during his examination as a witness: "Q. How much wages did you earn a week from Conant?" To this question the defendants objected, that it was incompetent and immaterial, and in dealing with the objections the court observed: "It is received only as an element of damages sustained by the plaintiff." * * * The defendants took an exception and the witness answered: "Five dollars a week." It is to be observed that there was no objection to the form of the question; apparently it called for the wages he had been receiving prior to the injury. We think such evidence was competent. In *Beisiegel* v. *New York Central and Hudson River Railroad Company* (40 N. Y., 9) it was held, viz.: "In an action to recover for personal injuries, evidence of the amount the plaintiff is earning at his trade, at the time of and immediately preceding the accident, is admissible upon the question of damages."

(3.) In the course of the cross-examination of the physician and surgeon who attended the plaintiff, he was asked for his opinion in respect to the condition the plaintiff's leg would have been in at the day of trial if he had "positively and speedily" obeyed instructions given by the physician. The question was objected to as incompetent and immaterial, and the court sustained the objection and the defendant took an exception. Upon looking into the evidence following, given by the witness, we find that he, in effect, answered the question. The witness says, viz.: "I did not have any trouble in setting the bones, they came together very nicely, and stayed so until he got off the cot bed, and if they had been kept where I first set them, there would have been no difficulty in the union of these pieces of bones."

The witness added at a later stage of his testimony that "the plaintiff was a restless patient; the bone was broken in a good many pieces; it was crushed, and that would make any man restless; I told him that rest was imperative, and in the fore part of the treatment administered opiates to him to quiet his pain."

Considering the evidence that the witness gave, we are not inclined to say that any prejudicial error was committed preventing an answer to the question as it was first framed upon the subject

embraced therein. Some other rulings were made upon questions of evidence, which do not require from us any special consideration, as we are of the opinion that no prejudicial error was committed.

(4.) When the injuries were received by the plaintiff he was under twenty-one years of age; and on January 7, 1889, the defendants paid to his father the sum of $100, and a paper was executed by the plaintiff on that occasion purporting to be a release of all claims against the defendants by reason of the injuries to the plaintiff's leg. When that paper was executed the plaintiff was still a minor, being only twenty years, eight months and seventeen days of age. It is to be borne in mind that the father of the plaintiff was entitled to his services until he became of age, and, therefore, he was entitled to receive of the defendants such sum as he had lost by reason of the injuries sustained disabling the plaintiff from earning wages. Where a minor is injured the parents have a right of action, and the child also has a right of action. (*Cuming* v. *Brooklyn City R. R. Co.*, 109 N. Y., 99; *Traver* v. *Eighth Ave. R. R. Co.*, 4 Abb. Ct. App. Dec., 422.)

It appears by the evidence that the check for the $100 was given to the father of the plaintiff at his house, and that the plaintiff was not there; and that when the plaintiff signed the paper he received nothing. We think the payment of the money, under the circumstances, to the father of the plaintiff does not stand in the way of the plaintiff's right of recovery.

When *Green* v. *Green* was tried before me at Special Term in Onondaga county, I found that the defendant, while an infant, had conveyed a certain piece of real estate to his father for the sum of $400; having spent and wasted the money, he had no means or property whatever, and subsequent to his becoming twenty-one years of age he returned to the premises and took possession of them without any restoration to his father of the money that he had received; and in an action of trespass brought by the father I held that the plaintiff could not maintain the action. In delivering the opinion in that case upon an appeal taken to this court (7 Hun, 494), GILBERT, J., says: "The court below, we think, properly gave judgment for the defendant. An infant cannot properly bind himself to his prejudice, but whenever the act done may be for his benefit, it will not be void, but he has an election when he comes of

age to affirm or avoid it. (2 Kent's Com., 233, *et seq.*, and cases cited.) Mere acquiescence, without acts, does not amount to an affirmance." That case was removed to the Court of Appeals and the judgments of the Special and General Terms affirmed. (*Green* v. *Green*, 69 N. Y., 553.)

We think we ought to allow the verdict to stand, and the judgment and order should be affirmed, with costs.

MARTIN, and MERWIN, JJ., concurred.

Judgment and order affirmed, with costs.