JOHN J. WEBER, Respondent, v. THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Appellant.

The ordinary care required of a traveler upon a highway approaching a railroad crossing demands that he shall make a vigilant use of his senses; that he shall look in every direction from which danger may be apprehended, and at the same time attentively listen for any signals or evidences of an approaching train.

The question whether ordinary care was exercised is one of fact for a jury, if there is any conflict in the evidence going to establish any of the circumstances upon which it depends, if there are inferences to be drawn from the proof which are not certain and incontrovertible, or if it is necessary to determine what a man of ordinary care and prudence would be likely to do under the circumstances.

While the vigilance and caution required of the traveler must be proportioned to the known danger, it is also, in a measure, limited by the usual and ordinary signals and evidences of danger.

Although it is not enough in all cases to absolve a railroad corporation from the charge of negligence in the running of its trains, or in the use and occupation of its tracks at a crossing, that the statutory signals are given, but circumstances may require other precautions to be taken, it is only required to take such precautions as have respect to the moving of the trains and the use of the road. It is not called upon to do any act outside of or disconnected with its actual operations.

The posting of flagmen, placing gates or other obstructions, or the giving special and personal notice to travelers at crossings is not required of it, and the omission thereof does not charge it with negligence.

In an action to recover damages for injuries received by plaintiff at a crossing on defendant's road the court charged, "that considering the nature of the business in which the defendant was engaged and the

hazard attending the running of cars in the streets of a city, and particularly on a dark night, the defendant was bound to exercise the utmost care and diligence, and to use all the means and measures of precaution which the highest prudence could suggest and which it was in its power to employ." *Held*, error.

*Johnson* v. *H. R. R. R. Co.* (20 N. Y., 65) distinguished and limited.

(Argued September 25, 1874; decided October 6, 1874.)

APPEAL from judgment of the General Term of the Superior Court of Buffalo, affirming a judgment in favor of plaintiff entered upon a verdict.

This action was brought to recover damages for injuries received by plaintiff through the alleged negligence of defendant.

Plaintiff was traveling in the evening in a wagon along Perry street, in the city of Buffalo, which street is crossed by seven tracks of defendant's road. These tracks were used in making up and dispatching freight trains as well as in the ordinary traffic. With this plaintiff was familiar. Defendant kept a flagman at this crossing during the day, but he was withdrawn about six o'clock P. M.

The evening was dark and cloudy. The plaintiff (according to his own testimony) drove up to the track and there stopped his horse and looked; he saw no light, signal or flagman and heard no whistle or bell; everything seemed to be quiet and he started along and was struck by a train of loaded cars backed down from the north upon the center track. The plaintiff approached the crossing from the west; and upon one or more of the tracks, west of that upon which the collision occurred, were long trains of cars extending from at or near the crosswalk in the street some distance north, and, as is claimed, intercepting the view of the approaching train from the position occupied by the plaintiff. He also testified that there was no light on the rear end of the moving train; that he saw none; that as his horse was just on the west rail he stopped to see if it was safe to cross, and remained just long enough to see if any movements were going on and heard no noise of any move-

ment; had his ears open, but did not listen except as his ears were open; he looked to see if the track was clear or any movements; did not look either north or south but straight ahead through the opening; that he could not see to the north because the other trains standing on the track were in the way and did not see the moving train till just as he was hit; that if a man had been on the top of the rear car swinging a lamp he could have seen him from where he was if he had looked that way; and if he had seen him he could and would have stopped; that he could see and did see down the track, south; that he saw cars on the north side but could not see any further to the north than to the ends of the cars standing there; that he did look south and that there was nothing but the darkness to prevent his looking north alongside of the car. Evidence was given by the defendant tending to show, among other things, that there was a man on the rear car of the backing train swinging a lantern, and that he saw the plaintiff and called to him and tried to stop him, and, also, that the plaintiff did not stop at all but passed directly on the track without looking to the right or left and using no precautions.

Defendant's counsel moved for a nonsuit which was denied. Various exceptions were taken to the charge. The principal propositions excepted to are stated in the opinion.

*A. P. Laning* for the appellant. Plaintiff was guilty of contributory negligence. (*Gorton* v. *E. R. Co.*, 45 N. Y., 660; *Davis* v. *N. Y. C. and H. R. R. R. Co.*, 47 id., 400; *Baxter* v. *T. and B. R. R.*, 41 id., 502; *Havens* v. *E. R. Co.*, id., 296.) The question of negligence was one of law and plaintiff should have been nonsuited. (*Gonzales* v. *N. Y. C. and H. R. R. R. Co.*, 38 N. Y., 440; *Van Schaick* v. *H. R. R. Co.*, 43 id., 527; *Davis* v. *N. Y. C. and H. R. R. R. Co.*, 47 id., 400; *Morrison* v. *E. R. Co.*, Ct. of App., unreported.) The greater the difficulty in avoiding a train and in hearing signals the greater the care and caution required of one crossing. (*Skelton* v. *N. W. R. Co.*, L. R.

[2 C. P.], 631.) The only question for the jury as to defendant's negligence was, whether it exercised reasonable care in the movement and management of the train. (*Griffin* v. *N. Y. C. R. R. Co.*, 40 N. Y., 34; *Beiseigel* v. *N. Y. C. R. R. Co.*, id., 9, 13, 14.) Defendant was not required to exercise the utmost care or to use all the precautions the highest prudence could suggest which were in its power to apply. (*Kelsey* v. *Barney*, 2 Kern., 425.)

*George Wadsworth* for the respondent. The plaintiff was not guilty of contributory negligence. (*Eakin* v. *Brown*, 1 E. D. Smith, 36; *Center* v. *Finney*, 17 Barb., 94; Seld. Notes, Nos. 2, 44; *Fero* v. *B. and S. L. R. R. Co.*, 22 N. Y., 209; *Clark* v. *Kinvan*, 4 E. D. Smith, 21; *In re The Perin*, 13 Am. Law. Reg., 561, 564; *Wilds* v. *H. R. R. Co.*, 32 Barb., 507; *Cook* v. *N. Y. C. R. R. Co.*, 3 Trans. Ap., 18.) The question was one of fact for the jury. (*Felix* v. *N. Y. C. R. R.*, 49 N. Y., 47; *Hackford* v. *N. Y. C. R. R.*, 53 id., 654; *Eaton* v. *E. R. Co.*, 51 id., 544; *Maginnis* v. *N. Y. C. R. R. Co.*, 52 id., 215; *Davis* v. *N. Y. C. and H. R. R. R. Co.*, 47 id., 400; *Bernhardt* v. *R. and S. R. R. Co.*, 23 How., 166; *Keller* v. *N. Y. C. R. R. Co.*, 24 id., 172; *Renwick* v. *N. Y. C. R. R.*, 36 N. Y., 132.) Defendant was guilty of negligence which caused the injury. (*McGuire* v. *H. R. R. R. Co.*, 2 Daly, 76; *Maginnis* v. *N. Y. C. and H. R. R. R. Co.*, 52 N. Y., 215; *Johnson* v. *H. R. R. R. Co.*, 20 id., 67, 75; *Cook* v. *N. Y. C. R. R. Co.*, 3 Trans. Ap., 8; *Griffin* v. *N. Y. C. R. R.*, 40 N. Y., 34, 42.) The charge was proper. (*Johnson* v. *H. R. R. R. Co.*, 20 N. Y., 67; *McKay* v. *N. Y. C. R. R. Co.*, 35 id., 75.)

Allen, J. The defendant seeks a reversal of the judgment in this action : First, because of the refusal of the court to nonsuit the plaintiff upon the ground that his own negligence contributed to the injury ; and, second, upon exceptions to the charge to the jury. The duty of every individual using a public highway at railway crossings to exercise that

degree of care and prudence called for by the peculiar circumstances, and proportioned to the danger of injury from a collision with a passing train of cars — such care and foresight as men of ordinary prudence would use if placed in the same situation — is well understood and authoritatively settled.

This ordinary care involves the vigilant use, by the traveler, of his senses, in approaching the place of danger, and that he should look in every direction from which danger may be apprehended, and, at the same time, attentively listen for any signals or evidences of an approaching train. If there is any omission of duty or precaution in this respect, and he sustains injury to his person or property, caused wholly or in part by such want of care, he must bear the loss, within the well established rule that a plaintiff can only recover in actions upon the case for negligence, when the injury is caused solely by the neglect of the defendant. (*Gorton* v. *Erie Railway Co.*, 45 N. Y., 660; *Davis* v. *N. Y. C. and H. R. R. R. Co.*, 47 id., 400; *Baxter* v. *Troy and Boston R. R. Co.*, 41 id., 502.)

If negligence of the plaintiff in such action, contributing to the injury, clearly appears from all the circumstances, or is established by uncontroverted evidence, it is the duty of the court to take the case from the jury and nonsuit the plaintiff. But if a finding by the jury that the plaintiff was free from the charge of negligence could not be set aside as wholly unsupported by evidence, although the evidence might be slight, and the question doubtful, a nonsuit would be improper. The rule is well expressed by Judge SELDEN in *Bernhard* v. *Rensselaer and Saratoga R. R. Co.* (1 Abb. Ct. of App. Decisions, 131): "If there is any conflict in the evidence going to establish any of the circumstances upon which the question depends, it must be left to the jury. If there are inferences to be drawn from the proof which are not certain and incontrovertible, they are for the jury. If it is necessary to determine, as in most cases it is, what a man of ordinary care and prudence would be likely to do under the circumstances proved, this, involving as it

generally must more or less of conjecture, can only be settled by a jury."

At the point at which the plaintiff received the injuries complained of, the street, a public thoroughfare in the city of Buffalo, was crossed by seven tracks of the defendant's railway, over which the cars of the defendant were frequently passing, not only in the ordinary traffic of the road, but in making up and dispatching freight trains. The plaintiff was familiar with the locality and the general use made by the defendant of the tracks there laid. A flagman was kept at the crossing during the day, but was withdrawn every day at evening.*

It is true that the vigilance and caution of the traveler must be proportioned to the known danger of injury, but it is also in a measure limited by the usual and ordinary signals and evidences of danger. The natural instinct of self-preservation ordinarily will lead to the employment of all the precautions which the situation suggests to an individual in danger of harm, and whether they are such as would occur to and be adopted by men of ordinary care and prudence must necessarily, in most cases, be a question for the jury. The intelligence and judgment as well as the experience of twelve men must settle a question of that character as one of fact and not of law. It may be conceded in this, as has been said in other cases of like character, that this branch of the case is not free from difficulty, and it may be that the freedom of the plaintiff from all negligence is not so entirely satisfactory as to place the question beyond all doubt, but in my judgment it presented a fair question for the jury. In the determination of that question all the circumstances were to be considered, the darkness of the night, the condition of the street with its seven railroad crossings, the obstructions of the view to the north, in whole or in part, by the defendant's cars upon the western tracks, the manner of the approach of

---

* The learned judge here considers the evidence at length, presenting it substantially as in the statement of facts, but this portion of the opinion, by his direction, is omitted.

the moving train, backing and not advancing, the slow rate of speed and consequent comparative noiselessness of its approach, the difficulty in distinguishing objects and their relation to each other in the darkness of the evening, and the jury was the proper tribunal for their consideration and for determining the effect to be given them as bearing upon the question of the alleged negligence of the plaintiff. The instructions to the jury upon this branch of the case applied as stringent a rule to the plaintiff as the defendant could ask. The charge was, that if at any place, or at any time before the collision, the plaintiff, by the exercise of his faculties, could have ascertained that the train was approaching from the north, it was his duty to ascertain that fact, and if, by the vigilant use of all his senses, he could have ascertained that fact in time to have avoided the collision, his omission to do so was negligence on his part and he could not recover whether the defendant was or was not guilty of negligence. The jury have found upon all the evidence with the plaintiff, upon this as well as upon the other questions submitted, and this finding cannot be said to be entirely without evidence in support of it. That the plaintiff did not chance to look up in the sky, and over the cars which obstructed his view of the railroad tracks to the north, and see the lantern in the hands of the man standing upon the approaching train, is not conclusive evidence of negligence, or, *per se*, an omission of a proper precaution. (*Davis* v. *N. Y. C. and H. R. R. R. Co.*, 47 N. Y., 400.) There was no error in refusing the nonsuit.

There are two exceptions to the charge urged as causes for a reversal of the judgment. The first is to the charge that it was for the jury to say whether, when a train, consisting of an engine, tender and nine cars, is backing on a dark evening, at the speed of four or five miles an hour, and about to cross a street used as a thoroughfare in a populous city, and the men in charge of the train know there is no flagman at the crossing, and the bell is sounding on the engine all the while, and a man is on the top of the rear car holding a lantern, and a

train of nine cars is standing on the next track west of and parallel with the track the moving train is on, and which standing train extends to the crossing, whether the defendant was negligent in not taking other measures to prevent a collision, and to warn all persons coming from the west of the fact that a train is approaching, it being for the jury to say whether or not the facts were as this part of the charge supposed or assumed them to be. The judge had before distinctly instructed the jury that there was no law making it the duty of the defendant to have a flagman, and that it was not negligence in it not to have one at this particular street crossing. Thus, one of the errors that led to a reversal of the judgment in *Beisiegel* v. *New York Central Railroad Company* (40 N. Y., 9) and *Grippen* v. *Same* (id., 34) was avoided. It is not certain, however, but this part of the charge is within the condemnation of these cases, and other decisions which might be referred to. If, by the charge, the judge merely intended, and was understood by the jury to say, that it was for them to determine, upon all the evidence, whether, in the conduct and management of the train, the defendant omitted any act in and upon the train which prudence and a proper regard to the time, circumstances and manner in which the train was moved, and the safety of those who should have occasion to cross the street, would suggest or call for as calculated to prevent a collision, and to warn all persons coming from the west of the approach of the train, the defendant has no reason to complain of it. It is not enough, in all cases, to absolve a railroad corporation from the charge of negligence, that the statutory signals are given. The circumstances may be such as to require other precautions in the running of a train, or in the use and occupation of the tracks. There may be negligence which will charge the company other than the bare omission to sound the whistle or ring the bell. (*Beisiegel case, supra ; Eaton* v. *Erie R. Co.,* 51 N. Y., 544 ; *Caldwell* v. *N. J. Stbt. Co.,* 47 id., 282 ; *MacKay* v. *N. Y. C. R. R. Co.,* 35 N. Y., 75.) But, as a general rule — and if there are exceptions to it they can exist only under very peculiar

circumstances and in extreme cases, and none occur to me now — a railroad corporation is only called upon, in adopting precautionary measures to prevent collision with and injury to those who in common with it have occasion to use public highways, to have respect to the moving of its trains and the use of its road. A railroad company must so operate its trains and use and occupy its railway, in the enjoyment of the right of way which it has in common with the ordinary traveler, as not to injure others in the exercise of their right of way, provided the latter are guilty of no want of care on their part. But the rule which imposes the obligation of care and prudence upon a railroad corporation, and measures its liability to others liable to receive injury from moving cars or locomotives, does not call for any act outside of or disconnected with its actual operations, and the use of the railway. The duty of posting flagmen, or having servants and agents, or placing gates or other obstructions, or of giving special or personal notice to travelers at railway crossings, can only be imposed by the legislature. Courts and juries cannot, whatever may be thought by them of the convenience or necessity of such or other like precautions, at particular crossings, hold the company to provide them under the penalty of being charged with negligence for the omission. Juries may, and must say, whether a railroad company sought to be charged for alleged negligence, has, in the operation of its trains, the use of its road tracks, and the conduct of its business, used that degree of care and prudence which the circumstances and its obligation to others required, but beyond this they cannot go. Negligence cannot be predicated of omissions to do something outside of and beyond this. This principle is at the foundation of the decision of *Beisegel's case* and *Grippen's case* (*supra*), and has been repeatedly recognized and acted upon by this court since. The portion of the charge now under review is somewhat equivocal. It does not directly point to acts to be performed by the defendant, outside of and disconnected with the actual use of the road and the operation of its trains, and

the necessity of measures apart from either and designed to operate only upon and affect the acts of those who might be exposed to injury, by crossing on the track simultaneously with a train of cars, but, perhaps, it is capable of a construction which would authorize the jury to say that some precautions should have been taken at the crossing, by which the plaintiff would have been warned of the approach of the train, and prevented from attempting to cross the road. The instruction in the form given was, at least, equivocal, and may have misled the jury.

The second and last exception is to that part of the charge in which the jury were told " that, considering the nature of the business in which the defendant was engaged, and the hazard attending the running of cars in the streets of a city, and particularly on a dark night, the defendant was bound to exercise the utmost care and diligence, and to use all the means and measures of precaution which the highest prudence could suggest, and which it was in its power to employ."

If the means and measures of precaution, which " the highest prudence could suggest, and which it was in the defendant's power to employ," were used by railroad corporations to prevent collisions and injuries to third persons at street and highway crossings, all damage and injury to travelers and others having occasion to use or be upon the streets would be absolutely prevented and made impossible except by the willful act of the party injured. This could be effected in any one of several ways, which readily suggest themselves. The placing a gate at the intersection of the highway and railway, in charge of the servants and agents of the company, or the stationing of one or more men at the crossing, to warn all that should come in the vicinity of the danger, or if need be, by force to prevent them from passing upon the track, would be effectual to prevent all injury, and if the stringent and far-reaching rule laid down in this case is to be adopted and followed, the courts will be relieved from all cases of this character. It would greatly simplify the law, and relieve trials of actions of this character from much of the difficulty

which is now experienced, to adopt such a rule. This instruction is supposed to be warranted by *Johnson* v. *Hudson R. R. R. Co.* (20 N. Y., 65), in which the same language was employed by the judge in submitting the case to the jury, and the charge was approved, and the verdict and judgment sustained by this court. But the circumstances of the case, and the negligence there alleged, differed essentially from the case before us, and the judge materially qualified and limited this part of the charge by reference to the circumstances and the character of the omissions of what was claimed to be the duty of the defendants upon the occasion of the injury. By his remarks, immediately following this clause, the judge clearly restricted their application and confined the jury in their deliberations to the omission of the defendant to use bells and lights upon the cars "as a measure that the prudence and foresight they were bound to exercise ought to have suggested." With this qualification and limitation the charge was proper and could not have prejudiced the defendant, and it was rightly upheld in this court. But it by no means justifies the broad proposition of the judge in this case, without qualification or limitation. Although Judge DENIO does say that the judge did not, in his opinion, overstate the obligations which attach to persons running cars in the night, etc., he had just before said that the judge, in this part of the charge, was calling the attention of the jury to the peculiarities of the case before them, and doubtless the author of the opinion had those peculiarities in his mind when he framed the paragraph before referred to. The decision can only be taken as an authority for the charge as made with its qualifications, and not for the broad proposition, as stated in this case, without limitation. Judge DENIO recognizes in the same opinion the well established distinction between the duties which a carrier of persons owes to his passengers and that which persons outside the carriage are entitled to claim from the carrier, and yet, if this charge can be sustained, that distinction is abolished. The measure of the duty which railroad corporations, in running their trains upon or across

public highways, owe to the public, is variously stated and in some cases very general language is employed, but in no well considered case is it held that the same extreme care and prudence is required to be exercised to guard against injury to third persons and the public, as is required to be exercised in respect to their passengers, and in the perform-ance of their, duties as carriers of persons. The degree of care as well upon the part of a person traveling upon a high-way, as on the part of a railway corporation crossing a highway, varies according to the circumstances of the case, and while the traveler may be only held to the exercise of ordinary care and the use of ordinary means to avoid danger, the railroad company is held to a high degree of care, and in all cases it may be said it is bound to exercise a very high degree of vigilance, and whether either party, in case of damage from collision, used all the precaution and care exacted of him by law, necessarily depends upon all of the circumstances of the case. No rule can be definitely declared which will greatly aid in determining the precise limits of the duty of either party in such cases. In other words, as said by Judge JOHN-SON, in *Kelsey* v. *Barney* (2 Kern., 425): " The degree of care imposed is not capable of exact definition. The difficulty is inherent in the subject." The principle contended for by the plaintiff was directly involved in the case cited, and was presented by an exception to the refusal of the judge to charge as requested, and the court held that the plaintiff was not entitled to the instruction asked, and that the defendant was not necessarily liable, although by the utmost precaution and care the collision might have been avoided. The general rule is that the care of a railroad company, in the operation of its trains, must be proportioned to the danger of accidents, and that when there is great danger there must be a corres-ponding degree of care. In some cases, and under some cir-cumstances, ordinary care may demand a very high degree of vigilance and precaution, but this does not necessarily include all that is physically possible. (*Cook* v. *N. Y. C. R. Co.*, 1 Abb. Ct. of Appeals Cases, 432 ; *Fero* v. *Buff. & S.*

*L. R. Co.*, 22 N. Y., 209; *Maginnis* v. *N. Y. C. & H. R. R. R. Co.*, 52 id., 215.)

The charge as to the degree of care, and the character of the measures to avoid injury required to be exercised and employed by the defendant, was erroneous.

The judgment must be reversed and a new trial granted.

All concur.

Judgment reversed.