WILLIAM G. POWELL, ADMINISTRATOR, &C., OF JAMES·
POWELL, DECEASED, RESPONDENT, v. THE NEW YORK
CENTRAL & HUDSON RIVER RAILROAD COMPANY,.
APPELLANT.

*Contributory negligence—when a failure to look out for an approaching train does:
not constitute it.*

The plaintiff's intestate, a bright boy of nine years of age, waited on the west--
erly side of the defendant's road, at a public crossing, until a long freight.
train, which was going in a southerly direction, had passed, and then imme-
diately attempted to run across the track, without looking along it, to see·
whether another train was approaching; after having run about thirty or·
forty feet he was struck by the locomotive of a passenger train, going north,
at a speed of about thirty or thirty-five miles an hour; there was a curve·
just south of the crossing, which hid the tracks beyond it, and only about
twenty-five seconds elapsed from the time the locomotive passed it until it.
struck the boy.

*Held*, that the court properly refused to nonsuit the plaintiff on the ground.
that the deceased had been guilty of contributory negligence

APPEAL from a judgment in favor of the plaintiff, entered upon
the verdict of a jury, and from an order denying a motion for a.
new trial, made upon the minutes of the justice before whom the
action was tried.

James Powell, a bright boy about nine years old, was killed on.
June 19, 1878, by being struck by an express train on defendant's
road, while attempting to cross their track at Fishkill Landing. The
railroad at the point of the accident runs north and south. As he
approached the track to return home a long oil train was passing·
south on the west track ; he waited until this train had passed, then
started across the track, was struck by the express train running·
north at the rate of thirty or thirty-five miles an hour on the east
track, and killed. Owing to a curve in the railroad at the point of
the accident, the adjacent buildings and the passing oil train, the·
deceased could see but a short distance, in the direction from which
the express train came. The fireman on the engine of the express·
train, who was keeping a look-out on the side from which the boy
approached, did not see him until the engine was upon him.

Evidence was given tending to show that at the place where the accident occurred, people were in the habit of crossing afoot and with teams, and had been for over fifty years, and that at the time of the accident, a sign board was standing at the crossing on which were the words : " Railroad Crossing—Look out for the Cars."

This action was brought under the statute by the plaintiff, (who was the father of the deceased,) as his personal representative to recover damages from the defendants for negligently causing the decedent's death. The defendant moved at the close of the trial for a nonsuit on the ground that no negligence was shown on the part of the defendant, and that it did appear that the plaintiff's negligence contributed to the accident.

*Frank Loomis,* for the appellant.

*Benjamin M. Fowler,* for the respondent.

GILBERT, J. :

Excluding the motion for a nonsuit, we think that none of the exceptions taken upon the trial deserve much comment. The objection to the question put to the witness, Robinson, was properly overruled. His position was described, and whether it actually disabled him from hearing the signals of the approaching train or not, was a question of fact and not one of law. There was abundant evidence to go to the jury on the question whether there was a public highway or crossing at or near the place of the accident, and whether the deceased was killed at or upon that crossing. It was proved that the crossing had been used as such for more than twenty years, and the defendant had recognized and proclaimed the existence thereof by the erection and maintenance of the signboard required by the general railroad act to be put up at railroad crossings. (L. 1850, ch. 140, § 40; 2 R. S., 6 ed., 164, § 163; *Devenpeck v. Lambert,* 44 Barb., 596; *People v. Kingman,* 24 N. Y., 559.) The space upon the railroad which the public had been accustomed to use as a crossing did not distinctly appear, nor did the evidence afford any means of defining precisely the limits thereof. Taking the reservation in the conveyance from Schenck to the defendant as a standard upon this subject, and assuming that the pub-

lic use had been co-extensive with the reservation, there could be
no question that the accident happened upon the crossing. But
the crossing had no doubt been practically located within narrower
limits, and its limits measurably defined by long-continued use by
the public with the assent and acquiescence of the defendant, and
it was for the jury to determine upon all the evidence whether the
deceased was struck by the engine within the limits of the crossing
as thus established. If he was so struck without fault on his part,
the defendant was liable to the plaintiff for any negligence on its
part which caused the death of the deceased. There was sufficient
evidence upon both sides of the question whether the deceased was
killed at the crossing to require the submission of it to the jury.
The negligence imputed to the defendant was an omission, 1st, to ring
the bell, or to blow the whistle on approaching the crossing, and, 2d,
of an omission of proper precautions against accidents when trains
proceeding in opposite directions were passing the crossing. With
respect to the first particular, there was a conflict of evidence ac-
cording to all the cases; for the testimony of two at least of the
witnesses for the plaintiff was of a positive character although neg-
ative in form, and not at all compatible with the testimony on
behalf of the defendant, that the bell was rung, or that the
whistle was blown, as required by law. (*Culhane* v. *New York
Central & Hudson River R. R. Co.*, 60 N. Y., 133; *Grippin* v.
*New York Central & Hudson River R. R. Co.*, 40 Id., 34; *Salter
v. Black River R. Co.*, 59 Id., 631.) We think, also, that the
omission of all precautions, such as abatement of speed, special warn-
ing by a flagman or otherwise, or shutting off ingress to the crossing,
under the circumstances proved in this case, was evidence of neg-
ligence on the part of the defendant, whether the statutory signals
of the approach of the train to the crossing were given or not.
The charge of the judge on this subject was fully warranted by the
cases next cited. (*Weber* v. *New York Central, &c., R. Co.*, 58 N.
Y., 451; *Cordell* v. *New York Central, &c., R. Co.*, 70 Id., 119;
*Dyer* v. *Erie R. Co.*, 71 Id., 228.)

The only remaining question is whether the evidence warrants
the inference that the deceased was free from negligence? He was
a boy nine years old. Being on the westerly side of the railroad

track while a freight train was passing in a southerly direction, he waited until that train had passed, and then immediately attempted to cross the railroad at a running pace. Having run thirty or forty feet only he was struck by the locomotive of a passenger train going north upon the easterly track, at a speed of thirty or thirty-five miles an hour. It was proved that the boy did not look along the track before he started to cross, or while in the act of crossing, and this fact is relied upon and is the only one suggested as evidence of negligence on his part. Evidence was given that the freight train which was passing at the time obstructed the view of the track south of the crossing. Indeed, that fact is conclusively proved by the evidence of the fireman of the locomotive attached to the passenger train. He testified that he was looking ahead of the locomotive; that he saw the boy only at the instant the locomotive struck him, and that twenty-five seconds only elapsed from the time when the locomotive emerged from a curve in the railroad track which hid the track south of the crossing till the boy was killed. While the crossing of a railroad without looking to see whether a train is approaching or not is ordinarily evidence, and in some cases is conclusive evidence, of negligence, yet that rule is not an inflexible one, applicable in all cases. Regard must be had to the age of the person killed or injured. The same degree of circumspection is not required of an infant, even though he be *sui juris*, as of an adult. Here, also, the accident happened under circumstances which were calculated to mislead and confuse the deceased. Even if the requisite signals of the approach of the passenger train were given the noise of the out-going freight train may have prevented the hearing of them by the deceased, or he may have supposed that they proceeded from the locomotive attached to the latter train, for it appears that only the latter locomotive could have been seen by the boy when he began to cross the track. It would be revolting to our sense of justice to impute negligence to the boy under such circumstances, and we think that the law does not require us to do so. (*McGovern* v. *New York Central, &c., R. Co.*, 67 N. Y., 417.)

There being no error, therefore, in the refusal to nonsuit, or in the charge of the judge, the judgment must be affirmed, with costs.

Present — GILBERT and DYKMAN, JJ.; BARNARD, P. J., not sitting.

Judgment and order denying new trial affirmed, with costs.