JOHN JONES, AS ADMINISTRATOR OF THE ESTATE, ETC., OF EDWIN BURT JONES, DECEASED, RESPONDENT, *v.* THE UTICA AND BLACK RIVER RAILROAD COMPANY, APPELLANT.

*Negligence —the contributory negligence of an infant is a question for the jury—when a company is not bound to do more than give statutory signals.*

The plaintiff's intestate, a boy about ten years old, was killed while crossing the defendant's tracks in a sleigh driven by one Thomas, and in which were the intestate's mother and another person. In an action against the company to recover the damages occasioned by the death:

*Held,* that the intestate could not be required to use the same judgment and discretion as would be required of an adult; and that the question of his contributory negligence was a question of fact, which was properly left to the jury.

The deceased was not struck by a regular train, but by an engine running by itself at the rate of twenty-eight or thirty miles an hour. The evidence as to whether or not the bell was rung continuously, for the eighty rods preceding the crossing, was conflicting, and raised a question which was held to have been properly left to the jury. In the course of the charge the jury were instructed that they were to determine, first, whether the defendant "performed the positive duty of ringing the bell and giving the signal; and then as to whether or not they performed the general duty which they owe, with every member of

the public, one to another, and that is to exercise all the care of ordinarily prudent persons in the transaction of their business." The court refused to charge that if the jury found that the bell was rung, as required by the statute, that the plaintiff could not recover, although charging that the ringing of the bell or the sounding of the whistle were the only signals required by law.

*Held,* that the charge was erroneous; that the failure to instruct the jury as to what particular acts, in addition to the statutory signals, might be required of the defendant, while they were allowed to consider such acts, might have misled them, and required a new trial to be had.

APPEAL from a judgment, entered upon a verdict at the Oneida Circuit; also from an order denying a motion for a new trial, made upon the minutes.

The intestate, Edwin Burt Jones, a lad about ten years of age, was killed at Price's Crossing, while *en route* for the house of Prichard, in the town of Steuben, to Remsen, upon the 1st day of February, 1882. At the crossing the track of the defendant runs in a northerly and southerly direction. The deceased was riding in a sleigh with his mother, Mary Ann Jones, and George Williams and John Thomas, the latter of whom was the driver, who was also killed at the same time. Mary Ann Jones, the mother, also received injuries, for which she has also brought her separate action. When the case was in this court upon a former appeal, a reversal was had for errors in the charge of the court, and an opinion in respect thereto was delivered by Mr. Justice BARKER.

At the time of the accident defendant's engine was passing northerly, at the rate of twenty-eight or thirty miles per hour. South of the crossing 1,470 feet there is a curve in the railroad. The sleigh approached the crossing from the west, between two and three o'clock in the afternoon, drawn by a pair of gentle horses upon a walk.

Upon the west side of the railroad was an ordinary board and post fence, extending south-westerly from a cattle-guard about thirty feet, connecting with a tight storm fence from ten to twenty feet high, extending southerly 347 feet. West of the latter fence are ranges of hills covered with brush, claimed to have been obstructions in the way of the vision of travelers on the highway. Near the cattle-guard fence were some banks of snow obstructing the vision.

Some evidence was given tending to show that the driver and Mrs. Jones looked both ways upon approaching the crossing, with

a view of discovering the approach of any train from either direction, and it appeared that the driver was aware that no regular train was due at that hour.

When the train was discovered, Thomas, the driver, attempted to rein in the team so as to avoid a collision; the horses became suddenly frightened by the engine and rushed upon and passing across the track, when the nigh horse and sleigh were struck by the engine and the driver and the boy, Edwin Burt Jones, defendant's intestate, were killed.

At the close of plaintiff's evidence a motion for a nonsuit was made and denied; as also at the close of the whole evidence.

There was conflicting evidence as to whether the bell was rung for eighty rods, continuously, prior to reaching the crossing.

*A. M. Beardsley*, for the appellant.

*Spriggs, Matthews & Spriggs*, for the respondent.

Hardin, P. J.:

Whether the intestate, a boy ten years of age, was guilty of contributory negligence or not was a question of fact upon all the evidence, and the inferences to be drawn therefrom by the jury. (*Payne* v. *T. and B. R. R. Co.*, 83 N. Y., 572; *Barry* v. *N. Y. Cent. and H. R. R. R. Co.*, 92 id., 289.) Such a boy cannot be required to use the same judgment and discretion, or exercise the same care and precaution, as an adult under like circumstances. (*McGovern* v. *N. Y. Cent. and H. R. R. R. Co.*, 67 N. Y., 417.) Under the rule applicable to the case, whether he was guilty of such negligence as caused or contributed to his injuries or not, is a question for the jury and was properly submitted to them. It would have been error in law, if the trial court had put a nonsuit upon the ground that the deceased supposed contributory negligence was a bar to the right of recovery in this action.

We are of the opinion that it would have been error in the court had any instruction been given to the jury, as a matter of law, that the deceased had not looked and made a reasonable use of his senses to discover whether there was a train approaching the crossing.

*First.* There is evidence, affirmative, that at a certain point he had looked.

*Second.* Whether the train at a prior time was visible from where he stood upon the sleigh is not absolutely clear. There was a question of fact for the jury in that regard; besides Mrs. Jones testified when and how she looked and listened, and that she did not discover an approaching train in time to avoid the collision.

As we have before said, it was no error to decline to grant a nonsuit based upon the supposed contributory negligence of the deceased. (*Smedis* v. *Brooklyn and R. B. R. R. Co.*, 88 N. Y., 13.)

It is contended by the appellant that the evidence in respect to the question of whether the bell was rung or not, is so preponderating in favor of the defendant that it was the duty of the trial court to hold and rule as a matter of law that the bell was rung, and that we should set aside the verdict based upon a finding that the bell was not rung, for the reason that the finding is against the weight and preponderance of evidence.

It is the duty of a railroad company to ring, or sound its whistle, continuously for a distance of eighty rods prior to reaching the highway crossing. To show that that duty was not performed in this case, plaintiff relied, first, upon the direct and positive testimony of Mrs. Jones, which is in support of that averment that the bell was not rung; second, upon what is said in the testimony of the witness Thomas in respect to the non-ringing of the bell, and the looking and listening to ascertain whether or not a train was approaching, and, third, upon the facts and circumstances bearing upon the probabilities involved in the inquiry as to whether the bell was rung or not.

Upon the other side of the issue the defendant relies upon the positive and direct testimony of the enginemen, to wit: Jennings, the engineer; Reese, the fireman, and Jordan, the brakeman, who were on the engine at the time of the accident. These latter three witnesses testify that the bell was rung, commencing near the curve, southerly of Price's Crossing, some 1,470 feet. They stating, in their opinion, it was seventy, or seventy-five or eighty rods south of that crossing when the bell began to ring, from the best estimates they were able to form in respect to the distance over which the bell was rung while passing that distance at the rate of some twenty-five or thirty miles per hour.

It is suggested that these witnesses were in no way impeached,

and that they were entirely credible. In considering their testi- mony it must be borne in mind that they occupied peculiar rela- tions in respect to the transaction.

The general railroad law provides that the bell shall be rung or whistle sounded, and that an omission to perform that duty subjects the offending party to a penalty for each offense.

While we recognize the rule that the burden is upon the plaintiff to establish negligence, and in doing so in this peculiar instance to make it appear that the bell was not rung, we think the conflict was such between the witnesses, having due regard for the circum- stances surrounding and relating to each side of the question, that the trial judge committed no error in ruling that it was a question for the jury to determine whether or not there was a ringing in accordance with the requirements of the statute. In reaching this conclusion we are not unmindful of the rule in respect to negative testimony, or the testimony of inattentive witnesses, as laid down in the cases bearing on that subject. (*Cuihane* v. *N. Y. C. and H. R. R. R. Co.*, 60 N. Y., 133, followed and approved in *McKeever* v. *N. Y. C. and H. R. R. Co.*, 88 N. Y., 667.)

We are therefore of the opinion that we ought not to disturb the verdict, upon the ground that the finding that the bell was not rung was against the weight and preponderance of evidence bearing upon that subject.

When this case was before us on the former appeal the question arose whether or not the circumstances were such as to warrant the instruction that was given on the former trial, to the effect that the jury might say, " upon all the evidence in the case, whether or not the defendant had failed to do any act which, in the exercise of ordinary and reasonable care, it ought to have done, and which, if it had done, would have prevented the collision."

The law and authorities bearing upon that aspect of the case are quite fully presented in the opinion delivered by Mr. Justice BARKER, and the rule laid down in that opinion is satisfactory to, and binding upon us.

In the course of the charge now before us for review, the jury were instructed to find, viz. : First. Whether the defendant " per- formed the positive duty of ringing the bell and giving the signal ; and then, as to whether or not they performed the general duty

which they owe, with every member of the public, one to another, and that is to exercise all the care of ordinarily prudent persons in the transaction of their business."

The defendant's counsel requested the court to charge, viz.: "The fact that this was somewhat of a blind crossing did not require the defendant to do more than ring the bell continuously for eighty rods before coming to the crossing, or sound the whistle at intervals."

The court replied, viz.: "That I decline to charge as a proposition of law." The defendant took an exception.

The defendant's counsel then requested the court to charge: "If the jury found that the bell was rung for eighty rods before reaching the crossing, then the plaintiff cannot recover." That was declined and an exception taken.

Also requested the court to charge that "the law only compelled the defendant to ring the bell or sound the whistle eighty rods before reaching the crossing, and if the defendant did so, then the plaintiff cannot recover."

The court replied: "The whole proposition I decline to charge." The defendant took an exception.

Subsequently the court charged, viz.: "The defendant was not to blame if the whistle was not blown before reaching Price's Crossing."

Subsequently the court instructed the jury, in reply to an exception that was taken, in regard to whether it was bound to use its own property so as not to injure the rights of others, "the point was that, in the transaction of its business, it was governed in the whole transaction by the principle of law that a man must do his business with that caution which an ordinary prudent person would use." To that instruction an exception was taken.

Subsequently the court remarked, in the presence of the jury, viz.: "There was no legal obligation imposed upon the defendant — I mean by the statute — except as to the whistle and the bell."

Subsequently the defendant requested the court to charge, viz.: "That there are no other signals given from a train except the ringing of the bell or the sounding of a whistle."

In reply to that request the court said, viz.: "I charge that;

that these are the only signals that are required by law of the defendant."

Upon looking through the charge, as delivered in connection with the requests and refusals and qualifications, we are not able to discover any particular omission or any particular act referred to in the instructions to the jury by the court, beyond the non-ringing of the bell, as a predicate upon which the jury might find negligence.

In the case of *Johnson* v. *Hudson River Railroad Company* (20 N. Y., 65), the justice qualified and limited the general statement made by him in respect to the duty of the defendant, by referring to the circumstances and character of the omissions of what was claimed to be the duty of the defendant upon the occasion of the injury.

In *Weber* v. *New York Central and Hudson River Railroad Company* (58 N. Y., 461), Justice ALLEN says, in respect to the charge in the Johnson case, the judge " clearly confined the jury in their deliberations to the omission of the defendant to use bells and lights upon the cars as a measure that the prudence and foresight they were bound to exercise, ought to have suggested." It is further said, in the Weber case, the defendant is not called upon to do " any act outside of or disconnected with its actual operations and the use of the railway." The Weber case is referred to in the case of *Smeedis* v. *The Brooklyn and Rockaway Beach Company* (88 N. Y., 20), approvingly.

In the case in hand we are of the opinion that the jury were not put clearly and fully in possession of the rules of law relative to the duties of the defendant. The jury may have understood that though they found the bell was rung for eighty rods next preceding the crossing, that there was some circumstance disclosed by the evidence which warranted them in finding a dereliction of duty on the part of the defendant. The peculiar circumstance warranting any such finding was not pointed out, nor the acts or non-acts named, and suitable instructions in respect thereto delivered.

Upon the whole, we have come to the conclusion that the jury may not have properly understood the rules of law applicable to this case, disclosed by the evidence. For the errors appearing in the charge and refusals to charge, we are of the opinion that a new trial should be ordered. (See *Beisiegel* v. *Cent. R. R. Co.*, 40

N. Y., 9 ; *Grippen* v. *Cent. R. R. Co.*, 40 id., 34, and cases already referred to in the opinion of BARKER, J., and delivered upon a former appeal.)

Judgment and order reversed and a new trial ordered, with costs to abide the event.

BOARDMAN and FOLLETT, JJ., concurred.

So ordered.