BRIDGET COYLE, Administratrix, etc., Respondent, *v.* THE LONG ISLAND RAILROAD COMPANY, Appellant.

*Negligence — duty of a railroad company to keep a flagman or gate at a crossing — right of the jury to consider its omission so to do — proper form of the charge of the court in regard thereto.*

Although in an action to recover damages for injuries sustained while crossing a railroad track, the omission of the company to station a flagman at the crossing may be proved and considered by the jury in determining whether under all

the circumstances of the case, including the absence of the flagman, the company exercised reasonable care and prudence in running the train at the time and place in question, yet, it is error for the court to charge that if the jury finds that it was the duty of the company, under the circumstances of the case, to keep a flagman at the crossing, as a matter of precaution to warn those approaching it, its omission to perform that duty is negligence which may make it liable for the injuries sustained.

The same rule applies to an omission of the company to erect and keep a gate at the crossing, and as to the charge of the court in respect thereto.

APPEAL from a judgment in favor of the plaintiff, entered on the verdict of a jury, and from an order denying a motion for a new trial made upon the minutes of the justice before whom the action was tried.

*E. B. Hinsdale*, for the appellant.

*Dennis McMahon*, for the respondent.

BRADY, J.:

The plaintiff sought in this action to recover damages sustained by the death of Patrick Coyle, which it was alleged was caused solely by the negligence of the defendant. Upon the trial several exceptions were taken, to which it is not necessary, however, to refer, inasmuch as those which relate to the refusals to charge as requested are regarded as fatal to the maintenance of the judgment.

The plaintiff was injured on the defendant's road, at a place which is known as the Blissville crossing; and it appeared in evidence that for several years before the accident a flagman had been stationed there to notify travelers of the approach of the trains, for whose use a small house or shanty was erected near the crossing. The defendant's counsel, on that subject, requested the court to charge that the defendant was not bound, either in law or in fact, to maintain a flagman at the crossing. He also requested the court to charge that the jury could not hold the defendant liable because no gate had been erected at the crossing. To the last request the court said: "I leave that to the jury;" and to the first request said: "I have charged all I intend to charge on that point. You are not absolutely bound to take any matter into consideration except the ringing of the bell and the blowing of the whistle, if the circumstances of the case require it. I leave that to the jury"

The defendant's counsel excepted to both of these refusals, and now insists that they were well taken. The court, in reference to the flagman, said : " But when it comes to the question of flagmen and gates at crossings, that must be left to the circumstances of each particular case, and you are to say whether, at such a crossing, under such circumstances, and particularly at this place, a flagman was necessary as a matter of precaution to warn those who were approaching. The precaution must be commensurate with the danger to be shunned, so that what might be negligence in one case and under certain circumstances might not amount to negligence under other circumstances and in another locality ; but the defendant is bound to take such precautionary measures in crossing the highway or the streets as is commensurate with the danger to be avoided."

In *Beisiegel* v. *New York Central Railroad. Company* (40 N. Y., 9), in which the judge charged the jury substantially that it was a question for them to determine whether the crossing referred to in that case was in so populous a portion of the city that it was due to the public safety and common prudence that the company should keep a flagman stationed at that point, and if they determined that it was then an omission to do so was negligence, the court declared that the charge was error and a new trial was granted. And in *Grippen* v. *New York Central Railroad Company* (same vol., p. 46), the court said : " The question to be submitted to the jury is not, therefore, whether, in their judgment, due care required the railroad company to keep a flagman at the station to give warning; not whether that was a suitable mode of giving notice of the approach of a train ; not what signal would be sufficient to give such notice. But the question is whether, under the actual circumstances of the case, the company exercised reasonable care and prudence in what they did, and whether its neglect caused the injury complained of."

In *Weber* v. *New York Central Railroad Company* (58 N. Y., 458), the court said : " The judge had before distinctly instructed the jury that there was no law making it the duty of the defendant to have a flagman, and that it was not negligence in it not to have one at this particular street crossing ; " and further, " thus one of the errors that led to a reversal of the judgment in *Beisiegel* v. *New York Central Railroad Company*, and *Grippen* v. *The Same*, was

avoided." And in *McGrath* v. *New York Central and Hudson River Railroad Company* (59 N. Y., 468), it was held that where a railroad company had been accustomed to keep a flagman at a crossing, the fact of his absence or withdrawal did not excuse a traveler from the charge of negligence in omitting the use of his senses. He had no right to interpret the absence as an assurance of safety. And it was declared that in an action to recover damages for injuries sustained by a traveler at a crossing, the receipt of evidence of such custom, and that the flagman was absent at the time of the accident, as a circumstance bearing on the question of the plaintiff's negligence, was error. The court said, referring to Beisiegel's case: " The law does not make it the duty of a railroad company to place a flagman at a street crossing to warn travelers. (*Beisiegel's Case,* 40 N. Y., 9.) It may do so for that purpose or for the protection of its trains or passengers. If it does so the duty is voluntarily assumed and may be abandoned at any time, and a mere failure to perform a self-imposed duty is not actionable negligence."

The case last cited was again before the court of Appeals (see 63 N. Y., 522) when the cases referred to were discussed, and although the court seems to have changed its rule in that case on a question of evidence as to the custom of having a flagman, nevertheless it declared that it had been decided that it was not the duty of a railroad company to keep a flagman at a crossing, and it was not chargeable with negligence for the omission of any such supposed duty. The principle involved in this proposition is discussed elaborately. The court said in the course of the discussion : " In a given case the evidence of the absence of a flagman is received, and the judge charges the jury that if they find that it was the duty of the defendant, under the circumstances, to keep a flagman at the crossing, the omission of that duty is negligence, which may make the defendant liable. Under such a charge that duty is made the central and controlling fact, and if the jury should find that the defendant had run its train with the greatest care in 'other respects, and that it was guilty of no other negligence, and yet should find that it had omitted that duty, they could find a verdict against the defendant. * * * Under such a charge as I have supposed, the jury is put in the place of the legislature, and its decision as to the duty has the force of statute law, and hence such a charge has

properly been condemned by the courts of this State." "In another case," the court continued, " the evidence is received and the jury is charged that the defendant owed no duty to any one to keep a flagman at the crossing, but that its sole duty to travelers upon the highway was to run and manage its trains with proper care, so as not to injure them in the exercise of their lawful rights, and that upon the question whether such care was exercised, they must consider all the circumstances existing at the time and place of the accident, and among them the fact of the absence of a flagman at the crossing. In such a case a proper use is made of the evidence, and the charge is liable to no just criticism."

In the case of *Houghkirk* v. *President, etc., Delaware and Hudson Canal Company* (92 N. Y., 219), the plaintiff requested the court to leave it to the jury as a question of fact to say whether, under the circumstances disclosed by the evidence, the defendant should have had a flagman at the crossing. The court answered : "I have done so." The court then added : "I said I would not charge as matter of law whether the company was or was not bound to have a flagman there ; it was a question for the jury to say under the circumstances ;" and the defendant again excepted. The Court of Appeals said : "The charge in this respect was substantially the same as that in *Grippen* v. *New York Central*, for which the judgment was reversed. In both instances the jury were allowed to find that due care required the presence of a flagman, and that the omission to station one at the crossing was negligence on the part of the railroad company." And the court further said : "The true rule and the proper distinctions were well stated in *McGrath* v. *New York Central and Hudson River Railroad Company* (63 N. Y., 528). It was there said it would be error for a judge to instruct a jury that it is the duty of a railroad company to keep a flagman at a crossing, or to submit to a jury the question whether it ought to have kept a flagman there ;" and the court said the reason was carefully pointed out ; that a railroad company is not bound and owes no duty so to station a flagman, and negligence cannot be predicated of the omission ; that the fact may be proven as one of the circumstances under which the train was moved and by which the degree of care requisite in its handling and running may be affected ; so that the question never is whether

there should have been a flagman or one ought to have been stationed at the crossing, but whether, in the view of his presence or absence, the train was moved with prudence or negligence. And the court said further, the jury " must have gone to their deliberations with the final impression upon their minds that they were at liberty to find that the defendant ought to have stationed a flagman at the crossing, and that omission constituted negligence upon which a verdict could be founded. For this error we think there should be a new trial."

This case is the latest exposition of the law relative to the stationing of flagmen in the management of railroads. It will have been observed that the learned judge in the court below, when asked to charge that the defendant was not bound to maintain a flagman at the crossing, said that he had charged all he intended upon that subject, and then alluding to other matters said, " I leave that to the jury," from which it may be fairly inferred, although it may not have been so intended, that he meant to leave to the jury the question whether or not the defendant was bound to maintain a flagman at the crossing. It is certainly open to such an interpretation and may have been so understood by the jury. Perhaps it may be said that no other construction of the language used can be adopted. But assuming that that be not so, the language used in the charge to which he referred is equally objectionable with that employed in the last case cited; because he said, as we have seen, that the jury were to say whether at the crossing under the circumstances a flagman was necessary as a matter or precaution to warn those who were approaching.

· This is equally forcible with the language employed in the last case cited, which was : " I leave it to the jury as a question of fact to say whether, under all the circumstances disclosed by the evidence, defendant should have had a flagman at the crossing." The two elements though not identical in language are in substance and in force. If the court had said, assuming the proof established that there was no flagman present at the time the accident occurred, to warn the deceased of the approach of the train by which he was killed, they might consider that as one of the circumstances under which the train was moved, and by which the degree of care requisite in its handling and running might be affected, so that the

question would not have been whether there should have been a flagman stationed at the crossing but whether in view of his presence or absence the train was moved with prudence or negligence, the charge might be sustained.

The line thus drawn by these cases is extremely delicate, as it is understood, and perhaps too fine for successful application generally in the trial of a cause, which cannot be so deliberate as the consideration of the question by court *in banc.* But it is the duty of this court to apply it as it is understood to exist upon a full consideration of all the cases bearing on the subject emanating from the court of last resort. It may be, however, that the exception considered must be held to relate only to the refusal to charge in the language of the request, no exception having been taken to the charge as given, and if so it is of no avail. The court was not required to charge that the defendant was not bound in law or in fact to maintain a flagman at the crossing. It has been shown by the doctrine of the cases cited that the propriety of keeping a flagman at a place indicated may be considered, under certain instructions, as an element affecting the question of negligence. In law the defendant was not bound to maintain a flagman but whether it might be requisite or not as a matter of fact, is a question which may, under the authorities, be properly submitted in a declared phase to a jury.

The disposition of the exception as last suggested, assuming it to be conclusively in favor of the plaintiff, does not, however, relieve the case of its embarrassment arising from the request in reference to the gate, inasmuch as what has been said in regard to the maintenance of a flagman at the crossing is considered to be equally applicable to the refusal to charge that the company could not be held liable because no gate had been erected at the crossing. (See cases *supra.*) The disposition of that request left it in the power of the jury to determine whether they could hold the defendant liable because no gate had been erected at the crossing. This was error. There is no greater obligation to erect a gate than to maintain a flagman, and a similar charge as to flagmen, as we have seen, would be erroneous. Under the refusal to charge as requested and what was said by the justice presiding, the jury retired with instruction which advised them they could hold the defendant liable because no gate had been erected, and they were thus allowed

to rest their verdict on that incident. This is fatal to the plaintiff (cases *supra*), and the judgment appealed from must be reversed and a new trial ordered, with costs to abide the event.

DAVIS, P. J., and DANIELS, J., concurred.

Judgment reversed, new trial ordered, with costs to abide event.