WHALEN v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department.   March 22, 1899.)

RAILROADS—INJURY TO PERSONS ON TRACK—NEGLIGENCE—NONSUIT.

Plaintiff's intestate, while crossing a railroad at a street crossing, was struck by a locomotive, and killed.   Cars standing on an adjacent track obstructed the view of persons approaching in that direction.   Intestate, before stepping on the track, looked for approaching trains.   No warning was given by the approaching engine, and it carried no light.   *Held*, that the evidence warranted the submission of the questions of negligence to the jury.

Appeal from trial term, Onondaga county.

Action by Patrick Whalen, as administrator of the estate of Bridget Whalen, deceased, against the New York Central & Hudson River Railroad Company, as lessee of the New York, West Shore & Buffalo Railroad Company.   From a judgment dismissing plaintiff's complaint, he appeals.   Reversed.

Plaintiff's complaint alleges that on the 11th of September, 1897, at Syracuse, Bridget Whalen, plaintiff's intestate, was upon Elm street, proceeding on foot along said Elm street, and that in so doing she necessarily came upon said railroad where it crossed said street, without any fault or negligence on her part; and the defendant's locomotive steam engine car was going in an easterly direction along the line of the railroad, and with its steam engine car going in a backward direction, carelessly and negligently, at a great and dangerous speed, without giving any signal whatever, and without using any light, or taking any necessary or reasonable precaution to notify the said Bridget, the locomotive engine struck the deceased with great force and violence, causing her death.   The defendant's answer admits that it is the lessee of the West Shore Railroad running through Syracuse, and alleges that the death of Bridget was caused or contributed to by her own fault, carelessness, and negligence.   The trial judge held that the plaintiff had not "made out any negligence on the part of the defendant, so far as negligence that affected her was concerned," and that the intestate was not shown to be free from contributory negligence.   An exception was taken to the granting of the motion for a nonsuit.   Thereupon the plaintiff asked to go to the jury on all the questions in the case.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, and SPRING, JJ.

George F. Quinn, for appellant.
Alexander H. Cowie, for respondent.

HARDIN, P. J.   At the time of the accident plaintiff maintained eight tracks passing from the west to the east across Elm street.   Elm street extended from the north to the south, and the deceased was approaching the crossing at about half past 7, when the witnesses say it was about dusk.   The witness Hoffman says that he was on the south side of Elm street, in the middle of the road, going north on Elm street across the tracks, and that just as he got to the extreme south track he saw a caboose pass across the street, and that he saw a woman and a gentleman near the intestate, coming towards him.

"They were coming south as I was going north.   I saw the woman try to pass.   Just as she got on the track, the engine came.   She hollered, and then it hit her.   Then I ran over there just as quick as I could run, down to where the head was cut off.   *   *   *   I saw her before she was struck, coming down south.   *   *   *   No bell was rung, or whistle blown, or anything, before

this woman was struck. The back part of the engine struck her. There was no light or anything upon the engine. * * * In my judgment, this engine was moving, at the time this woman was struck, about fifteen miles an hour."

This witness also states that the engine which struck her was going east, and the caboose, which passed in advance of the engine, was also going east.    He further testified:

"The caboose passed ahead of the engine. I should think about fifteen to twenty-five feet ahead. When I first saw the engine, it was right almost on the roadway. I could not see it. There was a lot of cars standing there. I could not see it until I got very near on the roadway. It had got very near onto the roadway when I saw it; within six feet; within six feet of the west line of the road. There were cars in there, all along. They were upon all the tracks but the main track. It might have been from six to ten feet west of the west line of the road,—the west line of Elm street. Those cars were on all the tracks but one, which was vacant. I could not move the one out; it was vacant. When this engine came up, this woman was coming right in the center of the highway, so far as I could see."

The witness Wright testifies that on the occasion of the accident he was on Elm street, and was going south.    He also testified, viz.:

"On this evening of the 11th of September I saw the caboose passing the street,—across the street. It was going east. Then I saw a lady ahead of me. She stepped on the track, and then the engine came along and struck her,—run over her. I was going from the north to the south. I arrived upon this track where the lady was struck by the engine. There were some cars on one side of the track,—on the west side. It was on the same side of the track from which this engine came. At this time in question there was no bell rung, nor any whistle blown. I saw this lady as she approached the track from Burnet avenue. Q. What did you see her do? A. I saw her look to see if there was anything coming. She looked east and west both. Then she stepped to go right across, when she was struck. I did not see this engine myself up to the time it struck this woman. I didn't hear it make any noise of any kind prior to striking her. * * * In my judgment, the rate of speed at which this train was moving was, I should judge, about fifteen miles an hour. * * * I could not say whether the engine and caboose were on the same track or not. It was the back of the engine that struck this woman. There was no light upon it."

The witness Conley testified that there were several cars standing on the tracks on the west side of Elm street, which tended to obstruct the view, of a person approaching the crossing from the north, of trains coming from the west.    Some of the cars stood within five to ten feet of the planking, and some of them were close up to the planking.

The plaintiff put in evidence section 2 of chapter 37 of the city ordinance.    That ordinance provides, viz.:

"No locomotive, car or train of cars shall be permitted to remain or be left standing in, across or upon any public street, street crossing, alley or public grounds within the city, nor shall any railroad company or its employés shift any cars, locomotives or trains, or make up or divide trains upon, across or along any of the streets of the city."

Upon the evidence given at the trial we are of the opinion (1) that the question whether the defendant was guilty of negligence was one for the jury, and (2) that the evidence of plaintiff's intestate's freedom from negligence was sufficient to warrant submitting that question as one of fact to the jury.

In Massoth v. Canal Co., 64 N. Y. 524, it was said:

"It is only where it clearly appears from all the circumstances, or is proved by uncontroverted evidence, that the party injured has, by his own acts of neglect, contributed to the injury, that the court can take the case from the jury, and nonsuit the plaintiff."

In Kellogg v. Railroad Co., 79 N. Y. 72, it was said, of a person approaching a crossing, that he was bound to exercise his sight to avoid danger. It was further said:

"He was not bound to the greatest diligence which he could have exercised in that way, but he was bound to exercise such care as a prudent man approaching such a place would ordinarily exercise for the protection of his life. Did he exercise such care? Or, in other words, was there an entire absence of evidence that he did? The witnesses differ considerably as to the extent of the obstacles between him and the approaching train. There were buildings, trees, shrubbery, the embankment on the south side of the road, and upon that a board fence. To what extent he could have seen this rapidly approaching train, if he had looked at various points in the highway, is uncertain. * * * Under all the circumstances surrounding the accident, we think it was for the jury to determine whether he exercised that care which the law required of him."

This case differs quite materially from Pakalinsky v. Railroad Co., 82 N. Y. 424. In that case it was said that:

"Where a person sees an engine upon a railroad, and knows, in time to avoid an injury, that it is approaching a crossing, the railroad company is not chargeable with negligence in not ringing the bell upon the engine, or because of the absence of a flagman usually stationed at the crossing, or the absence of a light upon the engine in the nighttime, as the sole object of ringing the bell, or of keeping a flagman, or of having a light, so far as travelers upon the highway are concerned, is to notify them of the approach of trains."

In that case the plaintiff was seeking to cross the track, and caught his foot between the rail and the planking, and was struck by an engine backing upon the track; and it was held that the fact that the bell of the engine was not rung, and that no light was on the rear of the tender, did not establish negligence which would enable the plaintiff to recover, as he testified that he saw the engine while it was standing still and when it was backing.

In Miller v. Railroad Co., 82 Hun, 170, 31 N. Y. Supp. 322, affirmed in 146 N. Y. 367, 41 N. E. 90, it was said:

"It was for the jury to determine what inference should be drawn from the facts which they found established under the circumstances disclosed by the evidence relating to the question of the intestate's freedom from contributory negligence."

See, also, McNamara v. Railroad Co., 136 N. Y. 653, 32 N. E. 765; Rodrian v. Railway Co., 125 N. Y. 529, 26 N. E. 741.

Finally, in respect to the intestate's freedom from negligence, it may be said, upon the evidence produced at the trial, that the language used by Allen, J., in Weber v. Railroad Co., 58 N. Y. 456, is appropriate, viz.:

"It may be conceded in this, as has been said in other cases of like character, that this branch of the case is not free from difficulty, and it may be that the freedom of the plaintiff from all negligence is not so entirely satisfactory as to place the question beyond all doubt; but, in my judgment, it presented a fair question for the jury. In the determination of that question all the circumstances were to be considered,—the darkness of the night; the condition of the street with its seven railroad crossings; the obstructions of the view to the north [here to the west], in whole or in part, by the defendant's cars upon the western tracks; the manner of the approach of the moving train,

backing, and not advancing; the slow rate of speed and consequent compara-
tive noiselessness of its approach; the difficulty in distinguishing objects, and
their relation to each other, in the darkness of the evening,—and the jury
was the proper tribunal for their consideration, and for determining the effect
to be given them as bearing upon the question of the alleged negligence of the
plaintiff."

See Brown v. Railroad Co., 32 N. Y. 597.

We think the learned trial judge fell into an error in granting the
nonsuit, and that the judgment entered thereon should be reversed.

Judgment reversed, and a new trial ordered, with costs to the ap-
pellant to abide the event.   All concur.